**Elean WOODARD, Appellant,**

v.

**Richard SCHWEIKER, Secretary, Department of Health and Human Services, Appellee.**

No. 81–1382.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Dec. 30, 1981.

Dick Jarboe (argued), Ponder & Jarboe, Walnut Ridge, Ark., for appellant.

Robert Van Norman, Asst. Regional Atty. (argued), Kansas City, Mo., Thomas Martin, Acting Asst. Atty. Gen., Washington, D. C., A. Doug Chavis, Asst. U. S.

Atty., Little Rock, Ark., Gabriel L. Imperato, Trial Atty., Dept. of Health and Human Services, Baltimore, Md.; for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and REGAN,* Senior District Judge.

HEANEY, Circuit Judge.

Elean Woodard appeals from a district court judgment affirming the decision of the Secretary of Health and Human Services denying Woodard disabled widow's benefits under 42 U.S.C. § 402(e). We reverse and remand for further proceedings.

Woodard is the widow of John D. Woodard, who died fully insured on March 5, 1974. She filed an application for benefits on June 15, 1976, claiming that she was disabled as a result of the residual effects of several operations, including surgery on her stomach, breasts and hands, and a hysterectomy. An administrative hearing was conducted on April 6, 1978, after which the ALJ ruled that Woodard was not disabled. This decision was affirmed by the Appeals Council. Woodard appealed to the district court, which remanded the case to the Secretary for further consideration and the taking of additional evidence. The court stated that the record should have included a psychiatric analysis of the claimant's condition, but that the record would have been insufficient even if such evidence had been included.

A second hearing was conducted on March 27, 1980. The previously developed medical evidence was supplemented with a psychiatric evaluation by Dr. Alastair Guthrie, who had examined the claimant on March 26, 1980. Woodard's claim was again denied, and this determination was affirmed by both the Appeals Council and the district court.

A claimant for widow's disability insurance benefits has the burden of establishing that she is at least fifty years old, that she is the widow of a wage earner who died

fully insured, and that she is disabled. The disability must have commenced within a specified period; in this case, by March 31, 1981, seven years from the month of the insured wage earner's death. See 42 U.S.C. § 402(e)(5).

A widow is considered to be disabled if "her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging *in any gainful activity.*" 42 U.S.C. § 423(d)(2)(B) (emphasis added). The Secretary has promulgated a "Listing of Impairments" that are sufficiently severe to preclude a person so afflicted from engaging in gainful activity. See 20 C.F.R. § 404.1501 et seq., Appendix to Subpart P. In order to be considered disabled, a widow must have an impairment or impairments listed therein or must establish that her impairments, singly or in combination, are "medically equivalent" to a listed impairment. 20 C.F.R. § 404.1578. Only medical evidence is relevant to a widow's disability determination; the age, education and work experience of the claimant—factors relevant when determining the disability of a wage earner—are not to be considered. 20 C.F.R. § 404.1577.

Woodard contends on appeal that she sustained her burden below by proving that she has a functional nonpsychotic disorder, an impairment listed in the Secretary's regulations. See section 12.04 Appendix I to Subpart P, 20 C.F.R. § 404.1501, et seq. The Secretary rejected this claim, and the district court held that there was substantial evidence to support the decision that Woodard is not so impaired. We do not reach the question of whether the Secretary's decision is supported by substantial evidence because we find that the decision was not reached after a proper consideration of all the evidence in the record.

At the first administrative hearing, the claimant testified that she suffers from severe headaches, swelling of her face, eyes,

* The Honorable JOHN K. REGAN, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

feet and legs, episodal dizziness and fainting, ulcers, the loss of gripping ability in her hands, nervousness and anxiety. She reiterated these complaints at the second hearing, and added that she had arthritis in her hands and back. She stated that she no longer reads, watches TV or sews because it increases her headache pain. She no longer drives and does no work other than minor housekeeping. She has minimal social contacts although she does attend church regularly. Woodard's sister testified at the first hearing, corroborating Woodard's complaints and specifically noting her personal observation of one of Woodard's fainting spells.

A number of reports prepared by Dr. Joseph E. Hughes, plaintiff's treating physician, were introduced at the first hearing, as well as a report by Dr. A. Davidson, a physician appointed by the Secretary. Davidson did not examine the claimant. The record was supplemented at the second hearing with a report by Dr. Alastair Guthrie, a psychiatrist who examined the plaintiff on March 26, 1980.

Following the second hearing, the ALJ sent the medical reports to Dr. Peyton Kolb, a psychiatrist who served as a medical advisor to the ALJ. Dr. Kolb was asked to determine whether Woodard has an impairment that is listed in the Secretary's regulations or is medically equivalent. The ALJ stated that he would be "bound" by the medical advisor's response. Kolb concluded that Woodard does not have such an impairment, and the ALJ therefore rejected her claim.

█ The ALJ's use of a medical advisor in this fashion is disturbing for three reasons. First, and most importantly, the Court finds itself unable to review the factual findings of the ALJ, adopted by the Secretary, because they were not in fact the findings of the ALJ. The ALJ, by expressly agreeing to be "bound" by the medical advisor's determination as to whether Woodard is "impaired," clearly abdicated his fact-finding and decision-making role. The courts have approved the use of medical personnel to serve as neutral *advisors* in

both wage earner and widow's disability cases. Their purpose is to explicate complex medical problems and, in some instances, to render an independent opinion on the evidence. *See Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971); *Bailey v. Califano*, 614 F.2d 146, 150 (8th Cir. 1980); *Sullivan v. Weinberger*, 493 F.2d 855, 860–861 (5th Cir. 1974), *cert. denied*, 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975). Medical advisors are not appointed to functionally "replace" the ALJ. Although the ALJ in this case alluded to his limited medical expertise, that was not a sufficient reason for him to abstain from weighing the conflicting medical evidence in the case, including the opinion rendered by the medical advisor.

█ The fact that the ALJ's decision-making process was skewed by his misapprehension of the medical advisor's proper role would alone prompt us to remand this case to the Secretary for reconsideration. A related problem, however, reinforces the necessity for a remand. Even if the ALJ had not expressly considered himself bound by the medical advisor's findings, the claimant still would have been unfairly disadvantaged by the procedure used. The claimant submitted medical reports by her treating physician outlining her physical and mental ailments and concluding that claimant's depressive state would prevent her from engaging in meaningful work. The ALJ stated, however, that "the only time that the testimony of the treating physician and the medical advisor could be considered on an equal footing would be if they both answered identical interrogatories with the listing of impairments as a guide. Then and only then, a reviewing court should rule that an Administrative Law Judge would be able to resolve conflicts in the medical evidence by either believing the treating physician or the medical advisor." The ALJ considered the medical advisor's report to be of greater probative worth than the findings of the treating physician simply because the advisor tailored his response to the format of the Secretary's regulations. In so doing, the ALJ not only ignored precedent of this

Court but fundamental concepts of fairness as well. We have held that the written reports of medical advisors who have not personally examined the claimant "deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir. 1974). The ALJ's view of the evidence directly contravened this principle. *See Itteilag v. Richardson,* 339 F.Supp. 1218, 1222 (D.R.I.1972).

Furthermore, if the ALJ felt it was important that the medical evidence specifically focus on the Secretary's "Listing of Impairments," fairness required that he submit the interrogatories designed for this purpose to the claimant's physician as well.[1] We have made it clear that the ALJ "is in the peculiar position of acting as an adjudicator while also being charged with developing the facts." *Landess v. Weinberger, supra* at 1189. He or she "has a duty to fairly and fully develop the matters at issue." *Id.* Accordingly, it was incumbent on the ALJ to give both side's doctors an opportunity to specifically address the key question at issue.[2]

Finally, we are concerned that as a result of the fashion in which the ALJ handled the claimant's case, the totality of the record concerning Woodard's disabilities

was not considered. Woodard testified at both hearings to the effect that she was subject to considerable pain and weakness and that, accordingly, she was unable to pursue her normal daily activities. The ALJ should have determined the credibility of this testimony. The ALJ stated in his opinion, however, that "the proper individual to consider disabled widows' or widowers' complaints of subjective pain would be the medical advisor and not the Administrative Law Judge." Thus, the ALJ left to the medical advisor the crucial determination of whether Woodard in fact experienced the pain and weakness she claims. This was done even though the medical advisor never examined Woodard, did not witness her testimony at the hearings and apparently did not even have a transcript of her testimony. Furthermore, the ALJ's correspondence to the medical advisor does not mention Woodard's subjective complaints, and certainly does not indicate that the validity of these complaints is the province of the advisor.[3]

We are aware that the Secretary's regulations provide that a claimant's impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508 (1981). Subjective complaints of the claimant are not irrelevant, however,[4] particularly in view of

---

1. This Court has previously suggested that [i]t might be advisable for the Secretary to submit a short set of interrogatories to examining physicians which will require the physician not only to set forth his full detailed opinion as to the extent of disability but also whether in his opinion the claimant was disabled from pursuing substantial gainful activity or, in a widow's case, any gainful activity within the relevant time period of disability. *Landess v. Weinberger,* 490 F.2d 1187, 1189 n.2 (8th Cir. 1974).

2. Woodard was represented by counsel throughout the Social Security proceedings. Following the second administrative hearing, the ALJ notified counsel that he planned to add the medical advisor's report, prepared after the hearing, to the evidence in the record. Counsel was not advised, however, of the overwhelming weight the ALJ intended to attach to the report. Counsel certainly was not informed that claim-

ant's treating physician should respond to the same interrogatories in order for his conclusions to be seriously considered.

3. The ALJ briefly commented that he must "consider" Woodard's subjective complaints of pain. The ALJ had already noted, however, that the medical advisor had found that Woodard is not impaired, and stated that he was bound by that determination. It is difficult to discern any utility in the ALJ's "consideration" of claimant's pain and other subjective complaints when his decision to deny benefits on the basis of the medical advisor's opinion had already been made.

4. *Cf. Ragsdale v. HEW,* 623 F.2d 528, 530 (8th Cir. 1980); *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir. 1978) (wage-earner disability claims).

the impairment at issue here. The necessary findings attendant to a complaint of functional nonpsychotic disorders include depression, anxiety and resulting constriction of interests and activities. *See* section 12.04, Appendix to Subpart P, 20 C.F.R. § 404.1501 *et seq.* Credible testimony from the claimant regarding the presence of these symptoms must be considered by the decisionmaker in determining whether the claimant is disabled.

For the reasons described above, we reverse and remand to the district court with directions to it to remand Woodard's disability claim to the Secretary. The Secretary shall be ordered to permit the claimant to supplement the record with written or oral testimony from her treating physician as to whether the claimant had a listed impairment or its equivalent during the relevant time period. The Secretary shall further be ordered to independently redetermine Woodard's entitlement to benefits, such determination to be made on the basis of the entire record, including the claimant's testimony and the existing and supplemented evidence procured from her physician.