**Josephine Marie DAVIS, Appellant,**

v.

**Richard S. SCHWEIKER, Secretary, Department of Health and Human Services of the United States Government, Appellee.**

No. 81–1855.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 26, 1982.

Decided March 5, 1982.

Thomas & Nussbaum, P.A., Little Rock, Ark., for appellant.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., George W. Proctor, U. S. Atty., Little Rock, Ark., Frank V. Smith, III, Regional Atty., New York City, Mary K. Biester, Asst. Regional Atty., Dept. of Health and Human Services, Dallas, Tex., for appellee.

Before BRIGHT, STEPHENSON, and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Josephine Marie Davis appeals from the district court's[1] grant of summary judgment in favor of the Secretary of Health and Human Services (the Secretary). The

---

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Ar-

kansas.

district court determined that substantial evidence supported the Secretary's determination that Davis was disabled in January 1977. *Davis v. Harris*, No. LR–C–77–327, slip op. at 5 (E.D.Ark. July 13, 1981). On appeal Davis contends that she was disabled in March 1973, and that the Secretary erred in relying on the report of a nonexamining physician to establish the onset date of disability. For the reasons discussed below, we affirm.

Davis was born on July 10, 1917, obtained a high school education, and worked primarily as a bookkeeper and office manager. She originally applied for disability insurance benefits in 1973. The application was denied initially and Davis did not seek further review. In August 1975, she again applied for disability benefits. After this application was denied, she requested a hearing before an administrative law judge, which was held on August 11, 1977. At the hearing, the administrative law judge informed Davis, who was represented by counsel, that her previous application could be reopened if she were found disabled.[2]

In the applications Davis alleged that she became unable to work in March 1973, because of injuries following a 1971 automobile accident, arthritis in her neck, back, and knees, and allergies. In an undated statement she denied having a serious problem with her "nerves." The medical evidence revealed that she suffered a cervical sprain and knee injury from the accident. In October 1975, Davis' treating physician, Dr. Gilbert Evans, a general practitioner, reported that her condition had deteriorated since the accident and that she had developed hypertension and bronchitis. In March 1977, a consulting physician found that Davis had significant medical problems but had the residual functional capacity for sedentary or light work that did not involve repeated squatting.

After evaluating Davis' subjective allegations and the medical evidence, the administrative law judge found that she could return to her former work and thus denied

benefits. She requested review of the administrative law judge's decision from the appeals council. Accompanying her request for review was a letter from Dr. Douglas Stevens, a clinical psychologist, who, on the basis of a September 1977 interview and testing, diagnosed a disabling conversion reaction.

The district court remanded the case. Davis did not again testify but submitted additional evidence of a disabling mental impairment. In July 1978, she began treatment by Dr. R. Westerfield, a psychiatrist, for chronic depressive neurosis. Dr. Westerfield reported that Davis confided to him a history of depression since the 1950's. At the administrative law judge's request, in October 1979, Dr. Robert Thompson, a psychiatrist, examined appellant. Dr. Thompson also diagnosed a depressive neurosis, which had lasted at least one and one-half years.

Because Davis had ceased working and in light of her history of complaints, the administrative law judge found that a "reasonable" onset date of disability was March 1973. The appeals council was troubled by the administrative law judge's finding concerning the onset date of disability. In an attempt to determine when Davis had become disabled, the council reviewed the medical evidence previously submitted as well as evidence inadvertently omitted from the record. The omitted evidence consisted of a report and letter from Dr. Evans. In 1973, Dr. Evans reported that Davis did not have severe limitation of motion nor any sensory, motor, or neurological limitations and estimated a ten-percent partial disability. In a 1977 letter, Dr. Evans indicated that he felt Davis to be totally disabled because of a traumatic neurosis following the 1971 automobile accident.

In view of the conflict in Dr. Evans' reports concerning the onset date of disability, the appeals council believed that a review of all the medical evidence of record by a medical advisor was warranted. The council submitted the medical evidence of

---

**2.** The regulations provide for reopening of a determination or decision within four years of the date of the initial determination if good cause is shown. 20 C.F.R. § 404.988(b)(1981).

A good cause showing can be made, *inter alia*, on the basis of new and material evidence. *Id.* at § 404.989(a)(1).

record to Dr. John Opal, an eligible board certified psychiatrist. In his written report, Dr. Opal carefully detailed the evidence and concluded that Davis was disabled by a combination of psychiatric and physical impairments since January 1977, nine months prior to Dr. Stevens' psychological evaluation. Dr. Opal found no evidence to warrant a 1973 onset date.

Davis objected to the use of Dr. Opal's report and argued to the appeals council that Dr. Evans' opinion as to the onset of disability should outweigh that of Dr. Opal. In support of her position, she submitted a 1980 letter from Dr. Evans stating that Davis had been disabled since 1972. The council considered Davis' objections but found that Dr. Opal's report outweighed Dr. Evans' conclusory and inconsistent opinions as to the onset of disability. The evidence permitted this finding.

■ Davis correctly asserts that, as a general rule, reports of nonexamining physicians deserve little weight in the overall evaluation of disability, especially in light of evidence to the contrary. See Woodward v. Schweiker, 668 F.2d 370, at 374 (8th Cir. 1981); Brand v. Secretary of the Department of Health, Education and Welfare, 623 F.2d 523, 527 n.6 (8th Cir. 1980). In examining the record in this case, however,

the district court determined that the evidence from Dr. Opal was compatible with the other evidence of record, while Dr. Evans' evidence was conclusory and conflicting. The district court concluded, therefore, that the Secretary's finding as to the onset of disability was supported by substantial evidence.

The Fifth Circuit recently held that under such circumstances the report of a nonexamining physician can outweigh unsupported conclusions of a treating physician. See Oldham v. Schweiker, 660 F.2d 1078, 1084–86 (5th Cir. 1981); see also Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 223–24 (1st Cir. 1981) (evidentiary weight afforded reports of nonexamining physicians varies with the circumstances);[3] Janka v. Secretary of Health, Education and Welfare, 589 F.2d 365, 369 (8th Cir. 1978) (Secretary can discount unsupported medical opinions).

■ This case differs from Woodard v. Schweiker, supra. In Woodard, this court condemned the Secretary's abdication of his factfinding and decisionmaking role to a medical adviser.[4] 668 F.2d at 373–74. In this case, the Secretary carefully evaluated all the evidence in determining the onset date of disability. In rejecting Dr. Evans' varying opinions as to the onset of disability the

---

**3.** In Rodriguez, the following factors enhanced the probative value of the reports of medical advisors: the nature of claimant's illness, the credentials of the advisor, the completeness of the medical reports upon which review was based, the role of the advisor, and the quality of the advisor's report. 647 F.2d at 223 24. These factors also enhance the value of Dr. Opal's report.

**4.** The court in Woodard was also concerned about the administrative law judge's use of a medical advisor. The court found that the administrative law judge did not adequately address allegations of disabling pain primarily because he abdicated this responsibility to the medical advisor, who was unaware of the allegations. Woodard v. Schweiker, supra, 668 F.2d 370, at 374–75. Appellant here argues that the administrative law judge's finding of a 1973 onset date of disability was more reasonable than the appeals council's finding of 1977 because the administrative law judge had the opportunity to observe her pain. Under the circumstances of this case, this reasoning is unpersuasive. Appellant's only hearing before the administrative law judge was held in 1977,

four years after the alleged onset of disability. Furthermore, in his first decision the administrative law judge specifically rejected her allegations of disabling pain, in part, because the pain was not constant and did not severely restrict her range of motion.

The court in Woodard also held that treating physicians must be afforded an equal opportunity with a medical advisor to address the key issues in dispute. Id. at 374. Although Dr. Evans, the treating general practitioner, addressed the issue of onset date, Dr. Westerfield, the treating psychiatrist, did not. We do not, however, find that this omission warrants a remand. Dr. Westerfield did not treat Davis at the time she alleges her disability began and Dr. Opal reviewed Dr. Westerfield's report which clearly noted a history of depression. Moreover, the Woodard court acknowledged Supreme Court approval of the use of medical advisors "to render an independent opinion on the evidence." Id. at 373 (citing Richardson v. Perales, 402 U.S. 389, 408, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971)).

appeals council noted that his reports conflicted with one another and that the conflict prompted the council to seek the aid of a neutral medical advisor. The opinion of this neutral advisor, according to the district court's analysis, "is compatible with other evidence in the record, and there is no indication that any evidence underlying such conclusion is faulty or inaccurate." *Davis v. Harris, supra*, slip op. at 5. We agree with that analysis.

Furthermore, the council found that Dr. Evans' 1973 report, in which he estimated a ten-percent partial disability, was of greater probative value than his later opinions of total disability because the report "was made at a point in time that is closer to the alleged onset date of March 31, 1973 than any of his other reports." The appeals council also correctly noted that opinions of treating physicians are not binding on the Secretary. *See Janka v. Secretary of Health, Education and Welfare, supra*, 589 F.2d at 369.

Accordingly, we hold substantial evidence supports the Secretary's determination and affirm the judgment of the district court.