Margarette H. PARIS, Appellant,

v.

Richard S. SCHWEIKER, Secretary of Department of Health and Human Services, Appellee.

No. 81–1597.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1981.

Decided March 31, 1982.

Black Hills Legal Services, Inc. by Todd A. Schweiger, Rapid City, S. D., for appellant.

U. S. Atty., Terry L. Pechota, Jeffrey L. Viken, First Asst. U. S. Atty., Rapid City, S. D., for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Margarette Paris applied, in 1979, for both disability benefits and disabled widow's benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 402, 423. Following a hearing, an administrative law judge (ALJ) denied both claims and the Appeals Council denied review. The district court upheld the ALJ and Mrs. Paris appeals. We affirm the denial of disability insurance benefits. With respect to the claim for widow's

benefits, we reverse and remand with directions that the Secretary be ordered to pay such benefits to Mrs. Paris.

Mrs. Paris's claim for disability insurance benefits is based upon her status as an independent wage earner. From age fourteen through age forty-one, she worked regularly as a waitress, short order cook or restaurant manager, except for short periods when she married and started a family. From 1961 to 1969, Mrs. Paris experienced a series of illnesses which form the basis of her disability claim. Her insured status expired on June 30, 1969. To recover, therefore, the burden is on Mrs. Paris to show that prior to the 1969 date, she was unable to engage in any "substantial gainful activity" due to a "severe impairment" which lasted for a continuous period of twelve months or longer. See 42 U.S.C. § 423(d)(1)(A).

There is no dispute that Mrs. Paris experienced a number of serious medical problems between 1961 and 1969. In 1961 and 1962, she developed leg ulcers and experienced periodic bowel control problems, both later linked to Crohn's disease. In 1964, she was diagnosed as having ulcerative colitis and possible ileitis and a steroid treatment commenced. In 1967, doctors performed a colectomy and ileostomy to treat the colitis.[1] In 1968, the leg ulcers were treated more successfully by ending the steroids and administering local medications. There appear to have been no further complications until after her insured status expired on June 30, 1969.

The ALJ found that Mrs. Paris's ailments were severe at certain points in time, but were controlled or remedied by surgery or treatment such that none of them was a "severe impairment" for twelve months or longer. This conclusion is inconsistent with the testimony offered by Mrs. Paris and by her son, but we cannot say that it is unsupported by the record. There are no records from the 1961–1969 period of a medical determination that Mrs. Paris was suffi-

ciently disabled for twelve months or longer. See generally Heisner v. Sec. of HEW, 538 F.2d 1329 (8th Cir. 1976). The only records made during the period at issue are from 1968 and relate generally to improved conditions following the change-over from steroids to alternative treatments. Other medical records offer only a terse summary of the treatment history from 1961 to 1969. The latter records deem Mrs. Paris disabled as of much later dates, as discussed infra, but there is simply no evidence of a medical determination that Mrs. Paris was disabled for more than twelve months before June 30, 1969.

■ Although Mrs. Paris's claim is that she was disabled from 1961 to 1969, her claim was not filed until 1979. In addition, the ALJ was aware that Mrs. Paris had managed to work through 1963 despite her leg problems and worked briefly in 1966 and 1967, albeit with difficulty. In light of all of these factors, we cannot say that the ALJ's determination is unsupported by substantial evidence on the record. This is not to suggest that failed attempts to continue or return to work evidence the lack of a disability. Indeed, the contrary is often true. See Lanes v. Harris, 656 F.2d 285 (8th Cir. 1981). Here, however, the record shows nearly a twenty-year lapse from the time of initial disability and the time the claim was filed; some evidence of ability to work during the period in question; and no evidence of a medical determination that the claimant was disabled for more than twelve months during the relevant period. It is the combination of these factors that precludes overturning the ALJ's decision.

Mrs. Paris also claimed disability benefits in 1979 based upon her status as a widow. The test of disability for a widow claimant is more stringent than for a person claiming under wage earner status. A widow claimant must be at least fifty years old, be the widow of a wage earner who died fully insured, and have become disabled within seven years of the wage earner's death.

---

1. A colectomy is the excision of part or all of the colon, and an ileostomy is the creation of a new exit passage from the intestine.

See 42 U.S.C. § 402(e)(5). Here, there is no dispute that Mrs. Paris was fifty-seven years old at the time of the hearing and was the widow of Charles D. Paris, who died fully insured on March 8, 1979. The only issue is whether Mrs. Paris was disabled at the time of her claim. The ALJ concluded that she was not. We cannot agree. In our view, the record clearly establishes that in March of 1979, Mrs. Paris was disabled within the meaning of the Act.

To qualify as disabled, a widow claimant must be unable to engage in *any* gainful activity, which is determined almost exclusively on the basis of medical conditions.[2] See *Woodard v. Schweiker*, 668 F.2d 370 (8th Cir. 1981); 42 U.S.C. §§ 423(d)(1)(A) & (d)(2)(B); 20 C.F.R. § 404.1577. Specifically, a widow must have either an impairment which has been deemed sufficiently disabling by the Secretary, or a condition which is "medically equivalent" to a listed impairment. See 20 C.F.R. § 404.1501 *et seq.* The determination of "medical equivalence" must include consideration of laboratory findings, medically observable facts and the claimant's subjective description of impairments. 20 C.F.R. §§ 404.1528–29. Subjective symptoms alone might not be sufficient, but they must be given weight especially when corroborated by clinical or laboratory evaluations. *Id.*

Here, Mrs. Paris concedes that no single impairment of hers is a listed impairment under the Secretary's regulations. Her contention is that the aggregate of her impairments permanently preclude her from engaging in any gainful activity. The record clearly supports her contention.

Mrs. Paris's ileitis and colitis resulted in an ileostomy in 1967. This was followed by bowel obstructions and a hernia in 1973, which recurred in 1974 and required a new ileostomy. She also developed a gallstone condition in 1973, but corrective surgery was barred initially by the discovery that she had also contracted diabetes mellitus. The diabetes appears linked to circulation and numbness problems which, in turn, require frequent rest. Mrs. Paris's leg ulcers, while yet to reopen, require daily salves and periods of leg elevation to improve circulation. The risk of renewed ulceration and similar skin problems restricts her activity because the other medical conditions would make healing of new ulcers very difficult. Mrs. Paris's eyesight is also worsening according to the medical evidence and she reads with the aid of a magnifying glass. Her daily regimen now includes self-administered insulin shots, monitoring and emptying of the ileostomy bag six to eight times a day, twice-daily salves on the leg ulcers and periods of rest and leg elevation. Her daily diet is a major undertaking due to the combined effects of the diabetes, gallbladder condition and ileitis. The nature, preparation, quantity and timing of food intake must be carefully handled to reduce the risk of gallstone and diabetic reactions.[3] Mrs. Paris's complaints of periodic weakness, numbness, dizzyness and related problems from standing, sitting or bending are believable on their face. They were also found "credible" by the ALJ and were generally corroborated by her son and by several reports of her treating physician.

It is difficult to treat seriously the contention that a person with the foregoing conditions is capable of any gainful activity. To support such a determination by the ALJ, the government attempts to isolate each medical condition and rely on evidence

---

2. By contrast, a wage earner claimant need only show an inability to engage in *substantial* gainful activity and nonmedical factors may be quite significant in making this determination.

3. The government concedes that Mrs. Paris's exogenous obesity is a complicating factor in her condition, but argues that because the condition is remediable, it cannot be given weight in determining disability. See *Weber v. Harris*, 640 F.2d 176 (8th Cir. 1981). In *Weber*, however, the claimant's obesity was a significant *cause* of the asserted disability. Here, the claimant is on a restricted diet due to other conditions and is very restricted in terms of physical exercise. Thus, weight loss would be quite difficult. Moreover, the weight condition does not in any way cause the other problems, although it complicates the disability that results.

that, at any one point in time, not all of Mrs. Paris's problems were actively concurring. The diabetes is insignificant, under this reasoning, because Mrs. Paris has gone into insulin shock only once and is not presently having such reactions. Two non-examining physicians asserted that the intestinal conditions were not disabling because they have not resulted in end organ damage, malnutrition or vein obstruction. One of these doctors, never having seen Mrs. Paris, also opined that she "retains a reasonable capacity for seeing, walking, lifting and standing." The government also emphasizes part of one of the treating physician's reports to the effect that at the time of that one report, there were no dizzy spells or skin rashes from the ileostomy bag.

This approach fails to account for the overwhelming evidence that Mrs. Paris's impairments have been chronic and recurring, becoming ever more complicated and requiring ever more restrictions with respect to her activity. Moreover, the non-examining physicians' reports can have little weight, especially when considered against the treating physician's repeated documentation and corroboration of the essential elements of Mrs. Paris's claim. *See, e.g., Woodard v. Schweiker, supra.* The treating physician also deemed Mrs. Paris disabled due to the combined effects of her conditions.

The fundamental flaw with the government's approach is that it isolates each condition and weighs its effects standing alone. As this Court has stated:

> In evaluating whether a claimant is capable of engaging in any gainful activity it is essential that the Secretary view the individual as a whole. It is senseless to view several disabilities as isolated from one another as the medical advisers did here. Each illness standing alone, measured in the abstract, may not be disabling. But disability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being.

*Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir. 1974).

Viewing Mrs. Paris's conditions as a whole, we find it impossible to reasonably conclude that she is capable of any gainful activity. This standard is the core of the medical equivalence test and we find that Mrs. Paris has met it. *See* 42 U.S.C. § 423(d)(2)(B). The case is, therefore, remanded with instructions that the Secretary be ordered to pay widow benefits to Mrs. Paris based upon her 1979 claim.

Affirmed in part, reversed in part and remanded.