Barbara Gertrude **TAGGART**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

Civ. No. 83–3020.

United States District Court, W.D. Arkansas, Harrison Division.

Jan. 6, 1984.

Frederick S. "Rick" Spencer, Mountain Home, Ark., for plaintiff.

Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Barbara Gertrude Taggart, seeks judicial review of a final decision of the Secretary of Health and Human Services denying her claim for disabled widow's benefits. The Court has jurisdiction of the cause pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, we reverse the decision of the Secretary.

Plaintiff filed her application for widow's disability benefits on October 20, 1981, alleging that she had become unable to work in October, 1975, because of the residuals of two whiplash injuries, pain in her neck, back, arms, legs and hands, headaches, memory loss, and lack of motion in her neck and back. Her claim was denied twice administratively. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). The hearing was held on September 15, 1982; plaintiff appeared at the hearing without

counsel or representative. On October 19, 1982, the ALJ issued his recommended decision, finding that plaintiff was not entitled to widow's disability benefits because she was not disabled under the terms of the Social Security Act. When the Appeals Council denied plaintiff's request for review, the decision of the ALJ became the final decision of the Secretary and is the decision that plaintiff seeks to have reviewed.

At the time of the hearing, plaintiff was fifty-nine years old and had completed high school and some college work as well as a nurses' aide training program. Over the years she had worked in and out of the armed forces as a nurses' aide, truck driver and secretary, but had not worked at all since 1966. In 1975, she began to draw Veterans Administration disability benefits because of her condition. Her husband died on October 8, 1981. Part of plaintiff's present problems began to develop in 1973 following an automobile accident in which she suffered a whiplash injury. Subsequent to the injury, plaintiff began to have trouble with headaches and pain and stiffness in her neck and shoulders. This condition was aggravated in a second rear-end automobile accident in 1975 in which plaintiff again suffered a whiplash injury. She testified at the hearing that she could do light housework only if she were allowed to proceed at her own slow pace. For example, she claimed that to wash a normal batch of dishes she had to sit and rest at least twice to allow the pain to subside. She estimated that she was not able to stand more than ten minutes at a time or walk more than very short distances. In addition to her housework, she also cared for a small herd of dairy goats, but was not able to milk them as often as they should have been milked because of loss of strength in her hands. She indicated that there were days on which she could not pick up even light objects without having them fall through her fingers.

On November 12, 1981, Dr. Ron Boyle made a neuro-psychiatric examination of plaintiff. Dr. Boyle noted an obvious limp, and physical examination showed definite weak flexion of the left leg and foot; the left leg was also noticeably smaller than the right. Grip strength was extremely poor in both hands with the loss estimated at 60%–70% or more. There was some atrophy of the forearms and hands, but it was not severe. Dr. Boyle felt that the prognosis depended upon determining more definitely the etiology of her symptoms and a proper diagnosis. He recommended that electromyogram and nerve conduction studies be made along with x-rays of the cervical and lumbar spine.

X-rays were taken and read by Dr. Harwood N. Sturtevant on November 18, 1981. The cervical spine showed moderately advanced hypertrophic and degenerative changes with some anterior bridging at C5 and C6. There was some intervertebral foramina impingement from osteoarthritic spurring posteriorly but no compression or destructive process. The lumbosacral spine demonstrated interspace narrowing and sclerosis at the lumbosacral joint, both on a degenerative basis. Otherwise, the alignment was good.

Dr. Dennis Berner saw plaintiff on February 23, 1982, on a consultative basis. He indicated that plaintiff had suffered from asthma all her life and was, at that time, using bronchodilators. Her lung problems were also aggravated by a number of allergies and by cigarette smoking. Pulmonary function studies revealed evidence of a severe degree of obstructive lung disease with very slight but probably significant improvement following bronchodilators. X-rays showed a significant degree of osteoarthritis with anterior spurring noted on the thoracic vertebrae. Dr. Berner felt that the chronic neck and low back pain was probably secondary to degenerative arthritis.

Finally, the record also contains a report from Dr. Steven P. Nelson, a chiropractor who treated plaintiff a number of times in 1982. Dr. Nelson indicated that he had found decreased motion in all ranges of cervical movement except for right lateral bending and right rotation. X-ray studies

showed degenerative changes in the Luschka joints along with post-traumatic calcification anterior to the interspace at C5–6. He believed that treatment involving manipulative mobilization of the affected area could lead to at least a 50% to 75% reduction of symptoms in six to eight months. Reflexes in the left forearm extensors were also noticeably decreased.

On review, the Court must accept as conclusive all findings of the Secretary which are supported by substantial evidence. *Celebrezze v. Bolas*, 316 F.2d 498, 500 (8th Cir.1963); *Brand v. Secretary of HEW*, 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence is that body of relevant evidence taken from the record as a whole necessary to support a reasonable conclusion, taking into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 484–85, 71 S.Ct. 456, 462–63, 95 L.Ed. 456 (1951); *Brand v. Secretary of HEW, supra*, at 527. Although there may be conflicting evidence present in the record, the Court's review of the final administrative decision is limited to deciding whether it is supported by substantial evidence. *Wilson v. Schweiker*, 681 F.2d 526 (8th Cir.1982).

To qualify for disabled widow's benefits a claimant must be unable to engage in *any* gainful activity; this issue is determined almost exclusively upon the medical evidence. *See* 42 U.S.C. §§ 423(d)(1)(A) and (d)(2)(B); 20 C.F.R. § 404.1577; *Paris v. Schweiker*, 674 F.2d 707 (8th Cir.1982); *Woodard v. Schweiker*, 668 F.2d 370 (8th Cir.1981). Age, work experience and education are relevant factors when determining the disability of a wage earner, but are not considered at all in the determination of widow's disability claim. *See* 20 C.F.R. § 404.1577; *Woodard v. Schweiker, supra*. To be found disabled, a widow must have an impairment(s) listed on the Secretary's "Listing of Impairments" (20 C.F.R. § 404.1501 *et seq.*) or establish that her impairments, singly or in combination are medically equivalent to a listed impairment. *See* 20 C.F.R. § 404.-1578.

In reaching his decision that plaintiff was not disabled, the ALJ compared each of plaintiff's impairments to the Listing of Impairments and concluded that no single impairment met or was the equivalent of a listed impairment. This method fails to consider fairly that a claimant's overall condition may, in fact, be disabling because of the effect of combined ailments even though no single impairment alone would qualify. The true standard of the medical equivalence test is whether a claimant is capable of doing any gainful activity. *Paris v. Schweiker, supra*. Considering the combined effect of plaintiff's respiratory and spinal problems, we could not reasonably conclude that she retained the capacity to perform any gainful activity.

We have thoroughly reviewed the record and must conclude that the decision of the Secretary was not supported by substantial evidence. We reverse the decision and order that the Secretary pay plaintiff benefits based on her claim.