**Barbara J. MARTONIK, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

**No. 84–5198.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1985.

Decided Sept. 23, 1985.

---

John L. Weyland, Minneapolis, Minn., for appellant.

Joan Lowes, Chicago, Ill., for appellee.

Before LAY, Chief Judge, PHILLIPS,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

LAY, Chief Judge.

Barbara J. Martonik appeals from a denial of social security benefits under the Social Security Act, 42 U.S.C. § 416(i) and 423(a) (1982 & Supp. I 1983). Martonik alleges that (1) the Secretary erred in finding that the medical evidence did not show Martonik's condition to be disabling prior to September 30, 1970; (2) the Secretary failed to base her decision on the record as a whole; and (3) the Secretary erred in disregarding medical evidence subsequent to September 30, 1970. We agree and reverse the Secretary's decision and remand to the Secretary for further proceedings.

In September 1980 Martonik filed an application for social security benefits alleging inability to work as of April 1967. Martonik is a forty year old woman who suffers from symptoms diagnosed as hypergammaglobulinemic purpura, Sjogren's syndrome, and renal tubular acidosis.[1]

---

* The HONORABLE HARRY PHILLIPS, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation. Judge Phillips participated in the oral argument and at conference agreed with the vote of the court. However, due to his untimely death he did not have an opportunity to review the opinion.

1. These symptoms originally included swelling of the parotid glands accompanied by fever and

Her medical records indicate that her symptoms began appearing at around age twelve. Her condition gradually worsened to the extent that she was unable to attend high school on a regular basis and obtained her diploma only through home study and tutoring. Her work history is limited to one job as a hospital switchboard operator in early 1966 and 1967.[2] According to Martonik's testimony, she was frequently absent from work due to illness and was terminated in October 1967. She has not been substantially gainfully employed since.

Martonik met the special earnings requirement only through September 30, 1970. Consequently, she was required to establish that her disability began prior to or upon the expiration of her insured status on that date. *See Bastian v. Schweiker*, 712 F.2d 1278, 1279–80 (8th Cir.1983). The Secretary denied her application. Upon appeal to the district court her application was once again denied and the Secretary's findings were affirmed.[3]

The issue is whether the Secretary's decision that Martonik was not disabled prior to the expiration of her insured status for any continuous twelve month period is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984).

Disputed here is whether she established disability for a continuous period of twelve months on or before September 30, 1970 during which she lacked the residual functional capacity to perform her past sedentary work as a receptionist and switchboard operator. The burden of proof rests upon Martonik to establish her entitlement to disability insurance benefits under the Social Security Act. *Davis v. Califano*, 605 F.2d 1067, 1071 (8th Cir. 1979). She must also establish that her disability existed prior to the expiration of her insured status. *See, e.g. Paris v. Schweiker*, 674 F.2d 707, 708 (8th Cir.1982); *Timmerman v. Weinberger*, 510 F.2d 439, 443 (8th Cir.1975).

At around age twelve, Martonik first experienced symptoms which were diagnosed as Sjogren's syndrome [4] and lymphoma and hypergammaglobulinemic purpura [5]. She then began suffering and has continued to suffer from swollen parotid glands and joints and purpura lesions [6]. She was hospitalized in June 1967 for a lymph node biopsy. In the spring of 1968 Martonik was hospitalized for approximately one month, four days of which she spent in a coma, for pneumococcal pneumonitis with empyema and renal tubular acidosis. She

---

other symptoms. By 1960, she displayed additional symptoms, including swelling of the ankles, joint pains, purpura lesions, and extreme dryness of the mouth.

**2.** There is also mention in the record of a temporary job as a receptionist at a men's club in 1965, and her earnings record indicates that she earned approximately $126 in 1968 and $24 in 1975. The record does not indicate the source of these earnings.

**3.** After the claimant's application for benefits was denied initially and upon reconsideration, a review hearing was held before an Administrative Law Judge, the Honorable Charles J. Fritsch. Judge Fritsch rejected her claim. That decision was affirmed by the Appeals Council, making the ALJ's decision the final decision of the Secretary. Pursuant to 42 U.S.C. 405(g), Martonik timely requested review by the district court. That court, the Honorable Harry H. MacLaughlin presiding, overruled her objections upon the recommendation of a magistrate

and granted the Secretary's motion for summary judgment. It is from that order of the district court which Martonik now appeals.

**4.** Sjogren's syndrome is a condition marked by inflammation of the cornea, dryness of the mouth and mucous membranes, purpuric spots on the face, enlargement of the parotid salivary glands and arthritis in several joints. *See* III Schmidt, *Attorney's Dictionary of Medicine* S—98–9 (1983).

**5.** Hypergammaglobulinemic purpura is manifested by the presence of an excessive amount of gammaglobulin in the blood and is especially present in chronic infectious diseases. *See* II Schmidt, *supra* note 4 at H—117 (1981).

**6.** Purpura lesions are hemorrhagic states characterized by extravasation of blood into the skin and mucous membrances resulting in patches of purplish discoloration. *See* III Schmidt, *supra* note 4, at P–324.

was admitted again in August 1968 for a kidney biopsy which was postponed because Martonik was pregnant. She was bedridden during the entire nine-month pregnancy but gave birth to a viable female infant in February 1969. In July 1969 she was again hospitalized for swelling in the eye area and once again in September 1969 due to fever, epigastric pain, nausea and a pruritic skin rash.

Following September 1970, Martonik was hospitalized in 1971 for depression (discharge diagnosis was renal tubular acidosis and hypergammaglobulinemia), in 1972 for an allergic reaction to oral sulfa with symptoms of dysuria, purpuric body rash, high temperature, swelling and acute thrombocytopenia, in 1973 for depression, twice in 1979 and at least four times throughout 1980 for symptoms of Sjogren's syndrome and renal tubular acidosis similar to those set forth above. Recent medical records indicate that her symptoms are similar to systemic lupus erythematosus ("lupus"), a multi-system inflammatory disease which is listed as an impairment at 20 C.F.R. § 404, App. I, Part A § 10.04 (1984).[7]

Martonik testified that her symptoms vary. She said that at times she is "almost like a normal person," but at times is so weak she cannot open doors or stand for more than a short period of time. Her illness forced her to finish high school at home with tutors. She testified that even though she was seated while she worked during 1966 and 1967 as a receptionist, her feet would swell up so that she could not wear shoes and she would go to bed as soon as she arrived home. Illness caused her to frequently miss work so that others were forced to fill in for her and by April 1967 "it was just getting to be too much." She was in a coma for four days in 1968

and spent nine months in bed during her pregnancy. At present, she can sometimes drive a car, occasionally make dinner, load the dishwasher, do laundry, shop and walk up to three blocks.

The ALJ found in his decision issued after the hearing that "the medical evidence of record shows that by 1966 claimant had been suffering for many years with intermittent symptoms of swelling in her ankles, purpura lesions on her extremities, joint pain and fever." However, the ALJ concluded that the claimant was not "under a disability" on or before the cut-off date of September 30, 1970 and was not entitled to a finding of a period of disability nor to any disability insurance benefits pursuant to 42 U.S.C. 416(i) and 423. This conclusion was based on the ALJ's finding that Martonik's medical condition was not disabling because her symptoms were "intermittent" and that "throughout the period from April 1967 through September 30, 1970 there was no continuous period of twelve months during which the claimant lacked the residual functional capacity to engage in minimal sedentary work in which she had past experience, as a receptionist."

■■■ The burden of proof is on Martonik to show that she was unable to engage in any substantial gainful activity prior to the expiration of her insured status. *Paris v. Schweiker*, 674 F.2d at 708. See 42 U.S.C. § 423(d)(1)(A). However, once she has demonstrated she cannot perform her prior work due to her disability, the burden of proof then shifts to the Secretary to show that the claimant can engage in some other substantial, gainful activity. *See Jackson v. Schweiker*, 696 F.2d 630, 631 n. 1 (8th Cir.1983); *Jelinek v. Heckler*, 764 F.2d 507, 509–11 (8th Cir.1985). In deter-

---

7. The district court rejected evidence that Martonik has lupus and counsel for Martonik did state at oral argument that Martonik's condition has never been positively diagnosed as lupus. The court noted in the memorandum opinion attached to its order granting the Secretary's motion for summary judgment that one of Martonik's physicians stated in a November 1976 letter that "We do not feel that there has been any evidence to make a diagnosis of systemic

lupus in Ms. Martonik." However, the court failed to note that the record also shows that in July 1979 a neurologic evaluation conducted during a hospitalization stated that Martonik's disease "apparently acts very much like lupus erythematosus" and medical histories taken during a 1980 hospital confinement notes that Martonik has suffered Sjogren's syndrome since early childhood and from chronic illness since age 15.

mining whether appellant has the residual functional capacity to do certain work, it must be kept in mind that she must be able to "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Wheat v. Heckler,* 763 F.2d 1025, 1031 (8th Cir.1985), quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (footnote omitted). The claimant produced convincing evidence that she has not performed any substantial gainful activity since 1967. No substantial evidence was presented by the government to show that she could return to work either as a switchboard operator or a receptionist before September 30, 1970. Under the circumstances, we find the burden should have been transferred to the government to show, as it is claimed, that she could do other sedentary work.

In *Basinger v. Heckler,* 725 F.2d 1166 (8th Cir.1984) this court concluded that in establishing eligibility for disability benefits both objective and subjective evidence must be considered, including "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status * * * because it may bear upon the severity of the claimant's conditions before the expiration of his or her insured status." *Id.* at 1169–70. Although the ALJ did ask Martonik questions regarding her health subsequent to September 30, 1970, the insured status date, he refused to use this evidence in evaluating Martonik's claim. Specifically, the ALJ stated:

> The remainder of the medical evidence of record concerns claimant's physical condition subsequent to September 30, 1970, the date claimant last met the special earnings requirements for entitlement to disability insurance benefits under the Social Security Act. For the purposes of this decision, the undersigned must look only at claimant's physical or mental impairments as they existed prior to September 30, 1970. Although the undersigned is sympathetic to the deterioration in claimant's medical condition which has occurred within the last three years, he is required by the Act to determine wheth-

er a statutory "disability" can be established on or before September 30, 1970.

\*     \*     \*     \*     \*     \*

Although examination of the claimant's medical condition subsequent to September 30, 1970 would possibly support a result different from that reached in this decision, the undersigned is required by the law to examine only claimant's medical condition prior to September 30, 1970 in determining whether claimant is entitled to a period of disability and disability insurance benefits. The undersigned does not wish the claimant to think that he has ignored the significant medical complaints from which she currently suffers; however, the undersigned is obligated by the Social Security Act to examine her condition only as it existed prior to September 30, 1970.

These findings plainly show that the ALJ did not, presumably because he believed that he could not, consider Martonik's medical records and other evidence of her condition subsequent to September 30, 1970 as support in establishing whether she had a disability entitling her to benefits under the Act. The evidence shows that Martonik suffered some disability during the period in question, that Martonik has had varying degrees of physical disability since adolescence, and that her condition has progressively worsened over time. No evidence in the record contradicts her claim that since little was known about lupus in the late 1960's the most significant medical evidence regarding her condition was assembled on successive hospitalizations occurring after September 30, 1970. The contents of Martonik's medical records for the period after September 30, 1970 are essential to a complete and accurate evaluation of her claim, as they demonstrate a series of continuous physically debilitating medical conditions which precluded her from engaging in substantial gainful employment. The ALJ's failure to consider evidence after September 30, 1970 in evaluating her condition as it existed before that date is clearly contrary to *Basinger.*

Although it is difficult to evaluate the severity of Martonik's degenerative condition during the time in question based on the evidence in the record, the subjective evidence and the testimony of the claimant and others show that Martonik was often unable to perform basic everyday tasks. Simply because her symptoms were "intermittent" does not necessarily mean that Martonik was not disabled for a twelve month period. In view of the failure of the Secretary to assume the burden of proof relating to claimant's ability to carry out other substantial gainful activity, the case must be remanded for consideration in light of the fact that the ALJ incorrectly placed the burden of proof on Martonik at the hearing. The ALJ's findings also fail to reflect that he considered the relevancy of the claimant's condition post-1970, which may demonstrate a continuation of disability and further corroboration of her pre-1970 diagnosis. Under the circumstances, we remand to the Secretary for further consideration of the evidence presented to date and of any additional relevant evidence, if either the Secretary or the claimant deem it probative, as to the issue of whether the claimant suffered such disability for any continuous twelve month period prior to the expiration of her insured status.

It is so ordered.