**Susanna LAFFIN, Plaintiff,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. IP 89–1086–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 29, 1990.

Robert Wright, Indianapolis, Ind., for plaintiff.

Deborah J. Daniels, U.S. Atty., Indianapolis, Ind., Gerald A. Coraz, Asst. U.S. Atty., for defendant.

## ENTRY

DILLIN, District Judge.

This is an appeal from the decision of the Secretary of Health and Human Services denying the plaintiff's application for widow's disability benefits. For the following reasons, the Secretary's decision is reversed.

### Background

Susanna Laffin was born on April 2, 1932 and was 56 at the time of her most recent hearing. She is the widow of Harold G. Laffin, who died on November 26, 1977.

Mrs. Laffin first applied for widow's disability benefits on February 21, 1985. Her application was denied by the administrative law judge (ALJ) on March 26, 1986. This decision was affirmed by the Appeals Council on September 4, 1986 and not further appealed. This decision is therefore

res judicata in the sense that plaintiff is presumed not to be disabled prior to March 26, 1986.

On November 6, 1987, plaintiff filed her second application for widow's disability benefits, alleging disability based on chronic obstructive pulmonary disease, and a mental disorder with symptoms of anxiety, memory loss, a past drop in IQ, and loss of concentration. After a hearing on October 14, 1988, ALJ Stephen E. Davis rendered his decision on January 12, 1989 denying benefits. The Appeals Council received seven letters from plaintiff's relatives and acquaintances as new support for plaintiff's claim. However, the Appeals Council on August 14, 1989 denied plaintiff's request for review, thus making final the Secretary's decision to deny benefits. Plaintiff now asks this Court to reverse the decision of the Secretary.

### Discussion

This Court must uphold the decision of the Secretary if the factual determinations made therein are supported by substantial evidence in the record and the Secretary has applied the correct legal standard. *Zalewski v. Heckler,* 760 F.2d 160, 162–63 (7th Cir.1985). The Secretary's factual findings will be conclusive if supported by " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 162 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The Court is required to examine the entire record of the proceedings, i.e., the evidence favoring the claimant as well as the evidence favoring the rejection of the claim, to determine whether there is "substantial evidence" for the decision. *Stephens v. Heckler,* 766 F.2d 284, 288 (7th Cir.1985).

To qualify for widow's disability benefits, a claimant must be unmarried, at least fifty years old, the widow of a wage earner who dies fully insured, and must have become disabled within seven years of the wage earner's death. *See* 42 U.S.C. § 402(e). The test of disability for a widow is more stringent than that for a wage earner in that a widow claimant must be so physically or mentally impaired that she is unable to engage in any gainful activity. *See* 42 U.S.C. § 423(d)(2)(B). Whether a widow is disabled is determined almost exclusively on the basis of medical conditions; age, education and work experience are not considered. *See* 20 C.F.R. § 404.1577. "Specifically, a widow must have either an impairment which has been deemed sufficiently disabling by the Secretary, or a condition which is 'medically equivalent' to a listed impairment." *Paris v. Schweiker,* 674 F.2d 707, 709 (8th Cir.1982); *see* 20 C.F.R. § 404.1578; Part 404, Subpart P, App. 1. "The determination of 'medical equivalence' must include consideration of laboratory findings, medically observable facts and the claimant's subjective description of impairments." *Paris,* 674 F.2d at 709; *see* 20 C.F.R. §§ 404.1528–29. This Court recognizes that the congressional policy underlying the Social Security Act requires courts to interpret the Act liberally in favor of coverage. *See Conklin v. Celebrezze,* 319 F.2d 569, 571 (7th Cir. 1963); *Raines v. Harris,* 508 F.Supp. 17, 19 (W.D.Va.1980).

There is no dispute that Mrs. Laffin meets the age and marital status criteria for widow's benefits. The only issue is whether Mrs. Laffin had disabling impairments between March 26, 1986, when the ALJ made the prior decision and September 30, 1987, the date by which plaintiff must have been disabled to qualify for widow's benefits.

In this appeal the plaintiff argues that there is insufficient evidence in the record to support either the ALJ's determination that the plaintiff did not meet the requirements for disability due to organic mental disorders, 20 C.F.R. Part 404, Subpart P, App. 1, § 12.02, or the ALJ's determination that her combined impairments did not render her disabled.

To establish disability based on an organic mental disorder, the plaintiff must meet the following requirements:

A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

1. Disorientation to time and place; or

2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or

3. Perceptual or thinking disturbances (e.g. hallucinations, delusion); or

4. Change in personality; or

5. Disturbance in mood; or

6. Emotional lability (e.g. explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Part 404, Subpart P, App. 1, § 12.02.

Plaintiff has submitted evidence of certain mental problems dating from childhood as well as others existing in the present. When she was eleven years old the plaintiff suffered from rheumatic fever with chorea (a convulsive nervous disease attended with irritability, depression, and mental impairment). Evidence in the record demonstrates that the plaintiff underwent a significant loss of IQ (more than fifteen points) between ages eleven and fifteen.

As an adult she has suffered from anxiety, memory loss, and loss of concentration, and has taken Centrax for her nerves.

Dr. Kathleen Fitzhugh–Bell conducted a neuropsychological examination the results of which are reflected in a report dated October 21, 1988. Dr. Fitzhugh–Bell concluded that plaintiff met the requirements for Listing 12.02. She stated that plaintiff met the Part A criteria for short and long term memory impairment as well as disturbance of mood. The Court notes that the finding as to mood is supported by medical records from Methodist Hospital on December 11, 1987, noting that plaintiff exhibited "extreme anxiety" and was taking Centrax for her nerves. Under Part B, Dr. Fitzhugh–Bell concludes that plaintiff has marked restrictions of daily living, evidenced by plaintiff's own description of her inability to keep house or perform daily routines; as well as deficiencies of concentration, persistence or pace, evidenced by plaintiff's difficulties with verbal tests.

The ALJ accepted Dr. Fitzhugh–Bell's findings for the A criteria, at least, as he stated, "for the sake of argument." However, he rejected the doctor's conclusions under part B that plaintiff had more than slight restrictions of daily living and that she experienced deficiencies of concentration. The Court finds his conclusions as to the B Criteria to be in error.

■ In reaching his conclusions, the ALJ relied primarily on the plaintiff's own testimony, letters which she had written in support of her prior claim, and a letter from two of the plaintiff's former neighbors, and weighed all of these more heavily than Dr. Fitzhugh–Bell's report. The Court notes that the Secretary's guidelines for mental impairments specifically state that the presence of a mental disorder should be documented primarily on the basis of reports from individual providers, such as psychiatrists and psychologists. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(D). Thus, although Dr. Fitzhugh–Bell's evaluation was conducted a year after the end of the elapsed period, it is entitled to great weight.

The Secretary's guidelines also provide for evaluations of daily functioning based on information given by nonmedical sources. Such information must come from people in a position to observe the applicant over a considerable period of time, such as the claimant's family members. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(D). Neighbors Earl and Hazel Hopping stated in their June 27, 1986 letter that they had lived next door to Mrs. Laffin for eight years. In that time they had observed her remodel her home, take part in community affairs, and care for her ailing father and daughter. They do state that her health has deteriorated, but do not give specific examples of plaintiff's difficulties. This letter suggests at most that in the past the plaintiff could engage in certain activities. However, the fact that she once remodeled her home and cared for family members is not substantial evidence that the plaintiff had no mental deficiencies during the relevant time period. If anything, the letter suggests that the plaintiff can no longer engage in such activities.

The Hoppings' letter, however, does not discuss mental deficiencies. Nor does a letter dated October 9, 1987, in which neighbor Mabel Teague states that she often assisted plaintiff with chores such as banking and grocery shopping when plaintiff had difficulty breathing. Thus, the primary evidence of mental deficiency before the ALJ was Dr. Fitzhugh–Bell's report and plaintiff's own testimony.

After the ALJ had rendered his decision, the plaintiff submitted to the Appeals Council seven letters from family members and relatives. The Appeals Council examined the new letters, which had not been presented to the ALJ, but found no basis for changing the ALJ's decision. We find the Appeals Council's decision to be in error, as the letters provided precisely the type of information needed to establish plaintiff's marked restriction in daily living and deficiency in concentration.

The family members and neighbors whose letters were submitted to the Appeals Council reported a number of examples of frequent and regular confusion, memory loss, and inability to carry out daily tasks. Betty Milner, Mabel Teague, Zelma Ledger and Annamarie Norred all report occasions when plaintiff became confused and drove on the wrong side of the road or forgot what road she was on. Jackie Hough, a grocery clerk, reports occasions when plaintiff would go through the check out line but forget to take her groceries, or look for a check cashing card which she had already gotten out. Her daughter Lisa McPherson reports frequent episodes of forgetfulness and confusion during which the plaintiff would forget that she had a cigarette burning on the ashtray, leave an item cooking on the stove, or leave keys in the keyhole of her door at home. Betty Milner reports that around the house plaintiff has trouble finding shoes and glasses, that she generally forgets to take the keys out of doors she has unlocked and that she forgets to remove nitroglycerin patches from her chest. These letters do not merely create conflicts in evidence; they fill in evidence of mental deficiencies where evidence from family and neighbors had been lacking. Mabel Teague's first letter concentrated on physical difficulties; her second detailed mental problems. The second letter does not conflict with the first; rather, it adds to the total picture of plaintiff's difficulties.

The Court finds the Secretary's decision in error in that Dr. Fitzhugh–Bell's neuropsychological report should have been given greater weight, and that the letters to the Appeals Council should properly have been properly considered substantial evidence of plaintiff's mental impairment.

Finally, plaintiff also objects to the ALJ's finding of no disability in that the ALJ failed to consider adequately whether the combined effect of her mental impairments and well-documented chronic obstructive pulmonary disease precludes her from engaging in any gainful activity. In determining disability, the Secretary must not only evaluate impairments separately, but he must also consider them "in combination to determine whether, taken together, they ... constitute a disability." *Smith v. Schweiker*, 671 F.2d 789, 791 (3d Cir.1982);

see 20 C.F.R. § 404.1526(a). In this case, the ALJ looked at each of Mrs. Laffin's afflictions and determined that each one separately did not qualify as a disability based on criteria in the Secretary's listing. However, there is no explanation in the record to support the ALJ's conclusion that the evidence does not establish that the claimant has a combination of impairments that is medically equivalent to a disability. Viewed as a whole, the record portrays a woman with:

(1) chronic obstructive and restrictive pulmonary disease (documented by her long-time treating physician Dr. Glenn Lord, who considered her to be completely disabled);

(2) severe chest pain for which she has been treated with Nitroglycerin patches;

(3) extreme anxiety for which she has been treated with Centrax;

(4) facet sclerosis;

(5) a mental impairment manifested by decreased ability to function.

As the Eighth Circuit has noted:

In evaluating whether a claimant is capable of engaging in any gainful activity it is essential that the Secretary view the individual as a whole.... Each illness standing alone, measured in the abstract, may not be disabling. But disability applicants are not to be evaluated as having several ... isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being.

*Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir.1974). Viewing claimant's conditions as a whole, this Court finds it impossible to conclude reasonably that she is capable of any gainful activity. The Secretary's decision must therefore be reversed and the case remanded with orders that the plaintiff be paid widow's disability benefits as of her earliest eligible date.