**Loretta ALVES, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 83–1777–C.**

United States District Court, D. Massachusetts.

June 27, 1985.

Richard K. Latimer, Kistin, Babitsky, Latimer & Oppenheim, Falmouth, Mass., for plaintiff.

Asst. U.S. Atty. Jeffrey R. Martin, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought under § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), in which claimant Loretta Alves seeks review of an unfavorable final decision by the Secretary of Health and Human Services. The matter is now before the Court on claimant's motion for summary judgment, Fed.R.Civ.P. 56, and defendant's motion for an order affirming the Secretary.

The claimant, who was 47 years old at the time of her hearing, has completed the tenth grade and last worked in 1974 as a bar maid and waitress. She alleges that since that time she has been disabled due to injuries to her right hand, which is her dominant hand. She also complains of several other ailments which include: pain and weakness in the left hand caused by a ganglion, arthritis of the neck and back, and emotional disturbances.

On September 30, 1982 a hearing was held before an Administrative Law Judge ("ALJ") at which Ms. Alves was represented by counsel. In addition to the voluminous medical record, the ALJ heard testimony from Ms. Alves and a vocational expert ("VE"). The substance of the VE's testimony was that even without the effective use of her right hand, Ms. Alves could perform several jobs available in the region. On cross examination by claimant's counsel, the VE testified that he based his opinion on "actual experiences, visiting certain plants ..., department of Labor statistics," and his personal observations of these jobs.

Upon this evidence, the ALJ made the following findings:

1. The medical evidence establishes that the claimant suffers from a severe impairment of her dominant right hand which leaves her with essentially no function of her right hand. The claimant is able to use her right arm and her right hand as a guide and support in conjunction with the use of her left hand.

2. Despite severely impaired use of the claimant's right hand, she does not suffer from disabling pain associated with the impairment of her right hand, as she herself admitted at the hearing that her pain was dull although continuous.

3. The medical evidence establishes that, although the claimant suffers from a ganglion of her left hand, she retains the ability to perform gross movements on a repetitive basis with her left hand and she suffers from no impairment relative to her left arm.

4. The medical evidence establishes that the claimant suffers from a mild cervical spondylosis. This condition does not cause the claimant a significant degree of pain or restriction of functional ability. In this regard, the claimant's allegation that she was unable to sit for longer than two hours is not supported by the weight of the medical evidence, and her testimony was not entirely credible.

5. The medical evidence establishes that the claimant suffers from depression which is neither severe or persistent.

6. The claimant is a 47 year old woman with a 10th grade education whose past relevant work has been unskilled.

7. Despite the combination of the claimant's exertional impairments, she retains the residual functional capacity to perform sedentary work as defined by Social Security Regulations No. 16, Section 416.967(a).

8. The claimant is precluded from performance of her past relevant work which a Vocational Expert testified had exertional requirements above the sedentary level.

9. The claimant has not engaged in substantial gainful activity since the alleged onset date of her disability.

10. Considering the claimant's age, education and previous work experience, pursuant to Rule 201.18 of Appendix 1, a finding that the claimant is disabled is not possible based on her exertional impairments alone.

11. The claimant's mental impairment is not of a severe nature and would not further limit her ability to perform any job which she retained the physical strength to perform.

12. Although the claimant suffers from a manipulative impairment of her right hand, a Vocational Expert testified that there are a significant number of sedentary positions in the regional economy which the claimant could perform using her nondominant left hand and her right hand only as a guide and support.

13. Despite the combination of the claimant's exertional and nonexertional impairments, she has retained the residual functional capacity to engage in substantial gainful activity through the date of this decision. The claimant, therefore, is four "not disabled."

After a review of the record, I find and rule that findings one through six, and eleven, which relate to Ms. Alves' physical and emotional condition, are supported by substantial evidence and may not be disturbed. 42 U.S.C. § 405(g). In particular, I note that an October 14, 1982 letter from Dr. Gegan reports "no objective evidence of disease in the left hand except a ganglion" and that gross movements of the left hand were not impaired. A second physician, Dr. Greene, found that "the left hand is good and strong." Dr. Greene's examination also revealed that although Ms. Alves had symptoms consistent with cervical spondylosis, she was capable of walking, sitting and standing. The ALJ's assessment of the claimants psychological difficulties are supported by reports from Dr. John Karkalas, a board-certified psychiatrist. Dr. Karkalas found that Ms. Alves depressive symptoms were neither serious nor persistent.

Although there is conflicting medical and psychiatric evidence on some issues, it is for the Secretary to resolve such conflicts and to determine what weight to give particular items of evidence. *Sitar v. Schweiker,* 671 F.2d 19, 22 (1st Cir.1982). Moreover, the ALJ may properly determine matters involving the credibility of witnesses, as he has done with respect to Ms. Alves' claims of pain. *Gray v. Heckler,* 760 F.2d 369 (1st Cir.1985).

There remains an issue as to whether the ALJ's determination that Ms. Alves is not entitled to benefits is correct, given his findings of fact regarding her condition. The ALJ's finding that claimant's impairments do not meet or equal those described in Appendix I, 20 C.F.R. pt. 404, subpt. P, is clearly supported by substantial evidence and not at issue here. He then went on to apply the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App II, finding that Ms. Alves retained the residual functional capacity to perform sedentary work as defined in the regulations. 20 C.F.R. 416.967(a). The claimant argues that this is error because she cannot, with her nonfunctional right hand and other physical problems, perform the full range of occupations which the Secretary has defined as sedentary.

Considerable support for this argument may be found in applicable portions of the regulations. In 20 C.F.R. § 416.967, the Secretary defines the categories of physical exertion which certain occupations require. Subsection 416.967(b), which defines the requirements of "light" work, sheds light on the meaning of the term "sedentary" with the following language:

> If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional *limiting factors such as loss of fine dexterity* . . . (emphasis added)

Furthermore, § 201.00(h) of Appendix II indicates that the "inability to perform jobs requiring bilateral manual dexterity significantly compromises the [individual's ability to perform sedentary work]." With these regulations in mind, I rule that the ALJ was in error when he determined that Ms. Alves could perform sedentary work as it is defined in the context of the Medical-Vocational Guidelines. Therefore, the Medical-Vocational Guidelines contained in Appendix II should not have been applied to the claimant's case. 20 C.F.R. pt. 404 subpt. P app. II § 200.00.

This, however, is not the end of the court's inquiry. The ALJ heard testimony from a vocational expert, made reference to this testimony in the body of his opinion, and made findings of fact based upon it. This, indeed, was the practice before the adoption of the Medical-Vocational Guidelines in 1978. While the use of these tables has been the subject of litigation, it has never been the law that these tables are the *exclusive* means of determining the availability of substantial gainful employment within a claimant's capability. *See Heckler v. Campbell,* 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983).

Where a claimant has limitations which do not fall squarely within the rules set forth in Appendix II, "full consideration must be given to all of the relevant facts of the case." *Id.* The VE's testimony indicates that he considered these relevant factors in arriving at his testimony that the claimant was able to perform employment available in the regional economy in substantial numbers. The ALJ properly relied upon this unopposed testimony in making his determination that Ms. Alves was not entitled to benefits.

The claimant further argues that the VE's testimony as to the number of jobs available for an individual with Ms. Alves' limitations was based upon the VE's improper use of statistics contained in the *Dictionary of Occupational Titles* and other publications. This argument, which in essence raises an issue of credibility, was raised during cross-examination at the hearing. As noted previously, an ALJ's determination as to credibility is seldom overturned by a reviewing court, *Gray v. Heckler.* Furthermore, the VE testified that he was familiar with many of these occupations as a result of his personal observations. Even if his use of statistics were to be disregarded as untrustworthy, that portion of the VE's testimony which is based on personal knowledge would provide substantial evidence in support of the ALJ's decision.

Accordingly, I rule that the Secretary's decision should be affirmed.

Order accordingly.