**Audrey NALLY**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services.**

**Civ. A. No. 84–1020–Z.**

United States District Court,
D. Massachusetts.

Feb. 14, 1986.

---

Daniel J. Harrington, Medford, Mass., for plaintiff.

Joan I. Milstein, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

The claimant, Audrey Nally, is a 49-year-old widow with an eighth grade education. She was last employed in 1959 as a factory worker assembling venetian blinds. Mrs. Nally suffers from uncontrolled hypertension, a chronic callus condition on her right foot, and other unrelated ailments. She applied for, and was denied, Supplemental Social Security ("SSI") benefits under Section 1602 of the Social Security Act ("the Act"), 42 U.S.C. § 1381a (1982), on the ground that her impairments were not "severe" as required by the regulations, 20 C.F.R. § 416.920(c) (1985). I review the final decision of the Secretary of Health and Human Services to determine whether the finding of non-severity was based on substantial evidence.

Regulations promulgated under the Social Security Act, 20 C.F.R. § 404.1520, prescribe a five-step sequence for evaluating claims of disability.[1] The first three steps are threshold tests. If a claimant is working (step one), or has the physical or mental capacity to perform basic work-related functions (step two), she is automatically judged not disabled. If, on the other hand, claimant has a "listed impairment," see 20 C.F.R. § 404, Subpart P, App. 1, she is automatically considered disabled (step three). If the threshold tests are not dispositive—i.e. if plaintiff's ability to perform basic work-related functions is significantly impaired but she does not have a "listed impairment"—the inquiry proceeds to steps four and five. Step four considers whether the claimant is still able, despite impairments, to do work she has done in the past. If so, she is not disabled. If claimant is not capable of performing past work, step five asks whether her impairments prevent her from performing any other work available in the economy. If so, she is disabled; if not, she is not disabled. 20 C.F.R. § 416.920 (1985); *Goodernote, v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982).

The ALJ's finding in this case that claimant "does not have any impairment or impairments which limit her ability to perform basic work-related functions" is a judgment, at step two, that plaintiff's impairments do not meet the threshold test of

---

**1.** Under Title II of the Social Security Act:
(1) The term 'disability' means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....
42 U.S.C. § 423(d)(1)(A) (1982). The same standard is applied under Title XVI. 42 U.S.C. § 1382c(a)(3)(A) (1982).

severity. Because the ALJ did not consider the factors prescribed by the regulations for a step two analysis, and because his decision is not supported by substantial evidence, I now remand this case for further findings consistent with this opinion.[2]

The regulations specify that a disability claimant must "have a severe impairment," 20 C.F.R. § 416.920(c), defined as an impairment that significantly limits a claimant's "physical or mental ability to do basic work activities." *Id.* at § 416.921(a). Basic work activities are "the abilities, and aptitudes necessary to do most jobs," *id.* at § 416.921(a), including: physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, capacities for seeing, hearing, and speaking, and a series of mental capacities not at issue in this case. *Id.*

The record in this case contains medical reports from three physicians, one of whom has treated claimant for over twenty years. These reports are unanimous that claimant suffers from hypertension that is poorly controlled despite daily medication. In addition, two out of three reports document claimant's pain from the plantar callus on her right foot and note evidence of early arteriosclerosis. Dr. Crane, plaintiff's treating physician, adds that claimant suffers from a ventral incisional hernia.

In judging Mrs. Nally not disabled within the meaning of the Social Security Act, the ALJ emphasized that though claimant's hypertension is under "poor control" there is no evidence of end organ damage. He noted further that her EKG was unremarkable, her chest x-ray normal, and that there was a full range of motion in her joints. As to the callus on claimant's right foot, the ALJ found that it causes "some discomfort," but "is not severe enough to pre-clude her performing basic work-related functions." The ALJ's conclusions as to claimant's organic functions find ample support in the various medical records. His finding, however, that plaintiff's callus condition does not impede work-related functions—like his general finding that claimant's impairments are not severe—is completely unsupported by any evidence.

Under 42 U.S.C. § 405(g) (1983), the findings of the Secretary, as to any fact are conclusive if supported by substantial evidence, *Burgos Lopez v. Secretary of Health and Human Services,* 747 F.2d 37, 39 (1st Cir.1984), defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is left to the Secretary to judge the credibility of witnesses and to draw inferences from, and resolve conflicts in, the evidence. *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981).

In this case, the only evidence regarding the impact of Mrs. Nally's physical impairments on her ability to perform "basic work-related functions" came from the report of her treating physician, Dr. Crane, and from claimant's own testimony at her hearing. Dr. Crane's report concluded that: "Mrs. Nally is unable to lift heavy objects of any kind, tires very easily, requires strong drug therapy for treatment of hypertension and has had radiation therapy for cancer of the cervix." Mrs. Nally's own account of her level of functioning is more comprehensive. Claimant testified that although she is able to take care of

---

**2.** It is worth noting that the step two severity test has been held invalid on its face or as applied by several courts of appeal, *see e.g. Johnson v. Heckler,* 769 F.2d 1202 (7th Cir.1985); *Yuckert v. Heckler,* 774 F.2d 1365 (9th Cir.1985), 768 F.2d 547 (3d Cir.1985); and by a district court in Massachusetts. *See McDonald v. Heckler,* 612 F.Supp. 293 (D.Mass.1985). Following the reasoning of the Seventh Circuit in *Johnson, McDonald* held that the "severity" test is incon-sistent with the Social Security Act's definition of disability because it allows the Secretary to judge severity with reference solely to medical diagnosis, without considering functional limitations and vocational considerations. Though the validity of the severity test is not at issue in this case, I am persuaded by the court's reasoning in *McDonald* that use of the severity test is not consistent with the Act's other criteria for determining disability.

**456**

her personal needs—bathing, combing her hair, dressing herself—she is unable to maintain a household. She has ceased to drive, because the pain in her foot makes working the peddles impossible, and her son and daughter take care of all shopping, laundry, cleaning, vacuuming, and most cooking. As to specific physical functions, Mrs. Nally testified that she can sit only for an hour, stand only five to ten minutes at a time, walk a maximum of a block and a half, and lift five pounds at the most. Although claimant retains the capacity to stoop, squat, bend, and kneel, she gets dizzy whenever she does so. In addition to dizziness, claimant reports constant headaches, a persistent throbbing in her foot, and tiredness "all the time."

The Court of Appeals for the First Circuit has made plain that the conclusions of a treating physician are entitled to no more evidentiary weight than those of other, examining physicians. *See United States v. Del Toro Soto*, 676 F.2d 13 (1st Cir. 1982); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 130 (1st Cir.1981). In this case, however, only one physician made any findings at all regarding Mrs. Nally's functional capacity. Dr. Crane's conclusions as to Mrs. Nally's ability to sit, stand, and lift—all factors to be considered in a stage two determination of severity—are controlling therefore on the issue of severity, not because they represent the judgment of claimant's treating physician, but rather because they represent the only medical evidence of claimant's functional capacities.

Likewise, Mrs. Nally's subjective complaints of pain are not, standing alone, evidence of her level of functioning, but they are to be considered "if there is a medically determinable impairment linked to the pain." *Winn v. Heckler*, 762 F.2d 180, 182 (1st Cir.1985). In this case, each one of claimant's complaints can be linked to medically diagnosable—and diagnosed—impairments. Dizziness, "pins and needles," and constant tiredness are consistent with uncontrolled hypertension; an inability to stand with the plantar callus; and an inability to lift with the hernia. Under the circumstances, it is not adequate for the ALJ simply to note claimant's subjective testimony, and then reject it without specific findings.

In short, the only evidence as to claimant's residual functional capacities—that of Dr. Crane and of claimant herself—suggests that Mrs. Nally indeed has a "combination of impairments which significantly limits [her] ... physical or mental ability to do basic work activities." Although the Secretary certainly has the freedom to reject such evidence in order to embrace contrary medical opinions, *Lizotte, supra* at 128, she does not have the freedom to reject it to embrace an evidentiary void.[3] *See Alves v. Heckler*, 611 F.Supp. 955, 957 (D.Mass.1985).

Nor is it proper for the Secretary to import criteria from a later step in the

---

**3.** It could be argued, of course, that because plaintiff carries the burden of proving disability, the Secretary could simply dismiss a claim as non-severe without any evidentiary support. I reject that conclusion for two reasons.

First, as the *McDonald* court noted, *supra* n. 2 at 298–99, the step two severity test distorts the burden of proof issue in disability cases in a way inconsistent with the sequential evaluation process taken as a whole. Circuit courts are unanimous that while the claimant carries the ultimate burden of proving disability, she makes a *prima facie* showing upon a demonstration, at step four in the sequence, that she has an impairment which prevents her from doing her past work. *See Hernandez v. Weinberger*, 493 F.2d 1120, 1123 (1st Cir.1974). The burden then shifts to the Secretary, at step five, to show that

the claimant is capable of performing other work, in view of her age, education and work experience. *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir.1985). The step two analysis permits the Secretary to terminate analysis before the claimant has had an opportunity to discharge her *prima facie* burden and before the Secretary has determined whether the claimant is capable of performing past relevant work.

Second, unless step two severity judgments are regarded as unreviewable, they are subject to the "substantial evidence" test on appeal. This test has the effect of transforming the claimant's burden from a straightforward burden of proving disability to that of proving the absence of substantial evidence of nondisability. Plaintiff has met that burden in this case.

evaluation sequence into a consideration, at step two, of the question of severity. The ALJ's reference, in this case, to the absence of "end organ damage" from hypertension correctly states the criterion for determining whether hypertension is a "listed impairment" (step 3), *see* 20 C.F.R. § 404, Subpart P, App. 1, Part A, § 4.00(C), but it misstates the factor—ability to perform basic work functions—that should be used to determine severity. Furthermore, the reference to an absence of end organ damage from hypertension fails to take into account that an impairment, even if not listed, may be judged "medically equivalent," to a listed impairment if it is equal in severity to a listed impairment, 20 C.F.R. § 416.926(a), or if it coexists with other impairments the combination of which is severe. *Id.*

I decline to read into the threshold test of severity criteria from a later stage in the evaluation sequence, *see Arroyo v. Secretary of Health and Human Services*, 558 F.Supp. 482, 485 (D.P.R.1983), and I conclude, after considering the entire record, that there is not substantial evidence to support a finding that Mrs. Nally's impairments did not significantly limit her basic work-related functions. Accordingly, this case is remanded for further proceedings according to the guidelines for sequential evaluation. The next step is to determine whether claimant's combination of impairments is "medically equivalent" to a listed impairment. If not, the Secretary must proceed to steps four and five, taking account of plaintiff's age, education, past work experience, and other vocational considerations to determine whether there is substantial gainful employment in the national economy that plaintiff can perform.

For the reasons stated, the Secretary's final decision is reversed, and the case is remanded to allow the Secretary to produce evidence as to plaintiff's residual functional capacity and make specific findings as to

---

**4.** On remand, plaintiff shall have the opportunity to submit a more comprehensive report from Dr. Crane, assuming she can obtain one, as the

her capacity to work in light of all her impairments.[4]

original report appears to have been lost through no fault of plaintiff.