**Geraldine WILLIAMS, Plaintiff,**

v.

**Otis R. BOWEN,\* Secretary of Health and Human Services, Defendant.**

**No. 85 C 2653.**

United States District Court,
N.D. Illinois, E.D.

May 14, 1986.

---

\* Pursuant to Fed.R.Civ.P. 25(d), Otis R. Bowen is substituted as defendant in this action. He suc-

Barbara Samuels, Deborah Spector & Associates, Chicago, Ill., for plaintiff.

William T. Clabault, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Geraldine Williams, a 59-year old widow, seeks review of the decision of the Secretary of Health and Human Services (Secretary) to deny her widow's disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d). Our review is proper under 42 U.S.C. § 405(g) because plaintiff has exhausted her administrative remedies.[1] We remand.

---

ceeded Margaret Heckler, originally named as a defendant, as Secretary on December 6, 1985.

1. Plaintiff filed an application for widow's disability benefits on February 18, 1982. That application was denied on May 5, 1982 and a

## I.

Disability benefits are awarded to a widow if she has at least one physical or mental impairment which is "of a level of severity which under the regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity," 42 U.S.C. § 423(d)(2)(B), where "gainful activity" means work activity "usually done for pay or profit." 20 C.F.R. § 404.1572(b) (1985).[2] The Secretary has set out a Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, which describes the medical standards used to find an impairment "severe" enough to be disabling. Under the regulations a widow's impairments must either meet or equal these standards. 20 C.F.R. § 404.1578.[3] If the widow has multiple impairments the Secretary cannot measure each impairment against the severity standard on an individual basis but must consider the impairments for their "combined effect." 42 U.S.C. § 423(d)(2)(C).

■ Our review is limited to determining whether the decision of the administrative law judge (ALJ) was based on substantial evidence, reading the record as a whole. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support [the] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). While the *Richardson* standard has been repeated so often it is almost

taken for granted, its application is not free from difficulty. The difficulty comes from applying a "reasonable mind" to a record that is replete with highly technical (and often illegible) medical information. At some point this information must be translated so that a reasonable mind can use it to make a judgment. The question then becomes: to whom should the burden of translation fall. The reasonable mind standard implies that the burden is not with the courts, as it implies that by the time the evidence reaches the courts it is susceptible of review by a reasonable person who is not a medical expert. Thus the burden lies somewhere between the claimant who gathers and the ALJ who dissects the evidence. Given the limited resources and often *pro se* status of the claimant, the burden of translation practically must fall most heavily on the ALJ. In order for the court to provide meaningful review, it is not enough for an ALJ to recite the medical terms for a claimant's ailments, and then conclude from that whether he or she is disabled. For example, when an ALJ says that a "lumbosacral X-ray revealed small spurs which were compatible with mild spondylosis, moderate osteoarthritis of the metacarpohalongial joint of the right hand" (tr. at 16), he or she knows what that means but many judges (including this one) do not, either in lay terms or in practical effect.[4] We assume that the condition was not especially serious, as plaintiff's attorney does not so contend—her arthritis was another condition in a combination. Fur-

timely appeal was filed on June 15, 1982. Her appeal was denied on November 8, 1982 and a timely request for hearing was filed on November 27, 1982. A hearing was held before an ALJ on May 23, 1983, and a hearing decision approving plaintiff's claim for social security insurance, but denying her claim for widow's disability was issued January 10, 1984. A request for review of the denial of widow's disability benefits was timely filed in April 1984, but the Appeals Council denied review on January 24, 1985. That decision stands as a final administrative decision from which judicial review may be taken under 42 U.S.C. § 405(g). This action was then commenced.

2. All C.F.R. references are to the 1985 edition.

3. The disability standard for widows is higher than for working claimants in that widows must be disabled from performing "any" rather than "most" gainful activities and the evidence of disability is based only on medical findings rather than on medical data plus the worker's age and education. The stricter standard for widows in the regulations has been upheld as a valid interpretation of the Act. *Reynolds v. Secretary of Health and Human Services*, 707 F.2d 927, 929 (6th Cir.1983).

4. Does that medical condition mean plaintiff cannot move her thumbs, has trouble using her whole hand, can use her hands with pain or has reasonable use of her hands?

ther the reason we remand is not because we could not understand the ALJ's findings. However, it would be helpful if ALJs assumed that judges need guidance through the technical thickets of medical terminology.

## II.

Plaintiff suffers from three impairments: polio-arthritis, hearing loss and depression. The ALJ reviewed the evidence as to each of these and found that none met the Listing of Impairments.

Section 2.08 of the Listings of Impairments governs hearing impairments and states as follows:

2.08. Hearing impairments (hearing not restorable by a hearing aid) manifested by:

A. Average hearing threshold sensitivity for air conduction of 90 decibels or greater, and for bone conduction to corresponding maximum levels, in the better ear, determined by the simple average of hearing threshold levels at 500, 1,000, and 2000 Hz. (See 2.00(B)(1)); or

B. Speech discrimination scores of 40% or less in the better ear.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 2.08. Neither party disputes the fact that plaintiff is totally deaf in her right ear. Both parties also recognize that plaintiff's speech discrimination score in her left (better) ear is 48% or 8% above the listing's threshold. Further, her hearing in the left ear seems to meet the requirement in § 2.08(A) of "average hearing threshold sensitivity for air conduction of 90 decibels or greater ... in the better ear, determined by the simple average of hearing threshold levels at 500, 1,000 and 2000 Hz."[5] The graphs produced from the hearing examination conducted by a physician at the Secretary's request shows that the average of

her air conduction results at the three levels required by the regulation is a number greater than 90 decibels. The physician's report states:

On the left ear she does have some responses at about the 90 decibel range in the higher frequencies. [Frequencies of 2,000 and up, according to the chart.]

■ No evidence in the record controverts this finding. Further, the regulations require a finding on bone conduction. While the same graph referred to above plots results of a bone conduction test, neither the doctor nor the ALJ make any mention of plaintiff's bone audiometry, yet the ALJ, without referring to any other medical opinion, found that "her hearing impairment does not meet or equal a listed impairment." An ALJ cannot "reject medical evidence for no reason or the wrong reason." *Wooten v. Heckler*, 637 F.Supp. 318, 320, (E.D.Pa.1986). The ALJ's finding on plaintiff's hearing impairment is not supported by substantial evidence. Several factors restrain us from reversing, however. Instead, we remand for the following reasons.

First, we cannot tell from the regulatory language whether plaintiff should have been tested with her hearing aid on or off, and whether the Listing's thresholds mean plaintiff is disabled if she meets the criteria without her hearing aid, even if she does not meet the criteria with her aid. The ALJ should address this issue of interpretation since it is crucial to a finding of disability.

Second, plaintiff correctly argues that the ALJ did not consider the *functional* impact of her hearing loss, *i.e.*, the medically verified limitations on her ability to hear in a normal work environment. Such a consideration is required for the regulatory scheme to have real world meaning. As the Second Circuit recently stated:

---

5. Note that this is the strict reading of the regulation which, because of its grammatical construction, could also be read to say:

Average [of both ears] hearing threshold sensitivity for air conduction of 90 decibels or greater ... determined by the simple average

of hearing threshold levels at 500, 1,000, and 2,000 Hz.

Because plaintiff's threshold sensitivity in her right is infinity, the average of the two ears would definitely be higher than 90 decibels.

If a claimant has an impairment that is not listed and is not the medical equivalent of a listed impairment, but the claimant nevertheless is unable to engage in any gainful activity, it is difficult to see how that person may be denied benefits. It would seem anomalous if an impairment that is only presumed to be disabling because it is listed results in allowance of benefits, yet an impairment that in fact leaves the claimant without the residual functional capacity to engage in any gainful activity is insufficient to warrant benefits.

*Tolany v. Heckler,* 756 F.2d 268, 271 (2d Cir.1985). *See also Strittmatter v. Schweiker,* 729 F.2d 507 (7th Cir.1984) (an ALJ must determine the demands of the work which he claims a claimant can do, and whether they match the claimant's physical abilities); *Rousey v. Heckler,* 771 F.2d 1065 (7th Cir.1985) (relying on *Strittmatter* to hold that a realistic assessment of work demands is required by the Social Security Act). The doctor hired by the Secretary in this case found that

[w]ith her [hearing] aid [plaintiff] is able to understand a conversation in a very quiet environment when the speaker speaks loudly, distinctly and looks at her. She is not able to understand conversation without her hearing aid.

(Tr. at 144).

No evidence in the record controverts this medical opinion, which greatly constricts the environment in which plaintiff can (sometimes) hear. The Secretary argues that the plaintiff did just fine at the hearing. However, we find that the discussion at the administrative hearing supports plaintiff's claims of functional disability. As plaintiff points out, the setup at the hearing was ideal. The environment was quiet, the ALJ faced the plaintiff and only one person spoke at a time. The environment at the hearing was not a fair test of plaintiff's hearing function in a normal work environment. Further, even in this environment the ALJ was forced several times to repeat himself (tr. at 30, 32, 36, 42–43, 46), and plaintiff testified as follows:

Q. Now, you are wearing a hearing aid now, is that right?

A. Yes.

Q. Your left ear or your right ear?

A. My left ear.

Q. Left ear? Does it help?

A. No, because when—these lights here, the fluorescent lights, it cuts it off and when I was inaudible it shorted it out and I had to go and buy some more.

Q. Okay, we can turn those lights out then, sure. I don't think we need them anyway. Yeah, is that better now?

A. Yeah.

Q. You can hear—

A. I can hear a little because when I turn it up where I can really hear you, it seems it hums a great deal.

Q. I see. Now you can hear better, is that right?

A. Yeah, when I'm watching your mouth and you don't talk too fast."

(Tr. at 40–41.) Therefore, the ALJ in making his impairment findings must consider plaintiff's impairment in the context of a normal working environment. *Cf. Johnson v. Heckler,* 769 F.2d 1202, 1210 (7th Cir. 1985) (once a plaintiff makes a *prima facie* case of disability the burden shifts to the Secretary to show that the claimant remains capable of working); *Wooten v. Heckler, supra,* 637 F.Supp. at 320 (burden of providing a vocational expert rests on the ALJ).

Third, the ALJ is statutorily required to make two additional determinations, neither of which were performed here. First, he must determine medical equivalency. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir.1982). Second, he must determine the combined effects of impairments. *Helms v. Heckler,* 572 F.Supp. 259, 262 (W.D.N.C.1983). Both determinations are essential to a proper result and in fact complement each other in the following way:

If the combined effects of her impairments preclude her from engaging in substantial employment, they must meet

the medical equivalency requirement under the regulations.

*Lang v. Harris,* 505 F.Supp. 43, 45 (W.D. Mo.1980).[6]

 Both determinations are medical in nature, indicating that the burden for making these findings should rest on the physicians involved. However, the statutory and regulatory language places the ultimate burden on the ALJ. *See Reynolds v. Secretary of Health and Human Services,* 707 F.2d 927, 930 (6th Cir.1983) (ALJ's medical determination is an independent one). The ALJ therefore has the responsibility either to make these findings based on the medical evidence before him or her, or to develop the record by sending the claimant back to the doctor for findings on medical equivalency and combined effects. *See Lang,* 505 F.Supp. at 45 (*remanded* so Secretary's physician could make a thorough and realistic analysis of the combined effects of plaintiff's impairments). The ALJ cannot in any case satisfy his or her role simply by listing each impairment and then stating, as he did here, that

> [w]ith respect to the claimant's application for widow's disability benefits, the medical evidence fails to show that she has suffered from any impairment or combination of impairments which meet or equal a listed impairment.

(Tr. at 17.) The "combined effects" finding is particularly significant in this case. The plaintiff suffers from both a hearing loss and severe depression. It is not unlikely that the combination of these impairments renders her unable to perform any work activity, which, by the defendant's own admission, includes "understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with charges in a routine work setting." (Defendant's memorandum in support of summary judgment at 4, *quoting* 20 C.F.R. § 404.1521(b)).

6. *See also Paris v. Schweiker,* 674 F.2d at 710: Viewing [claimant's] conditions as a whole, we find it impossible to reasonably conclude

 A lack of substantial evidence calls for a remand to gather more information. *Lang,* 505 F.Supp. at 46; *Nally v. Heckler,* 638 F.Supp. 453 (D.Mass.1986). While the ALJ's abdication of his responsibility here comes perilously close to error as a matter of law calling for reversal, *Schmoll v. Harris,* 636 F.2d 1146, 1150 (7th Cir.1980), we remand because we feel the equivalency and combined effects determinations belong in the first instance to the ALJ. We specifically order the ALJ to make these determinations within the context of plaintiff's ability to function in a normal work environment that requires the ability to perform the basic activities listed in 20 C.F.R. § 404.1521(b).

### Conclusion

The case is remanded so that the Secretary can make findings consistent with this opinion. We request that the determination be made within 90 days.

that she is capable of any gainful activity. This standard is the core of the medical equivalence test....