818 F.2d 867
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Darrell VICK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-5478.
 United States Court of Appeals, Sixth Circuit.
 May 19, 1987.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and Edwards, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant, Darrell Vick, alleged disability because of hearing impairment and lower back pain in his application for social security disability benefits for the period beginning July 11, 1980. He was denied benefits by the Secretary, because his impairments were found to be "not severe." After the Appeals Council denied review, appellant sought review in the district court, who affirmed the Secretary. we remand the case for consideration of the next step in the sequential review process.
 
 I.
 
 2
 Vick had experience in mining coal and working in a saw mill. He was a younger individual, age 49, with a high school education at the time of the hearing. His application alleged disability since July 11, 1980 because of hearing loss and lower back pain.
 
 
 3
 Vick's claims were supported by the testimony of Drs. Gendell, Brashear, Dave, and Donley. The Secretary produced the report of Dr. Quadar, who examined Vick at the request of the Secretary. The administrative law judge relied upon the testimony of Quadar and expressly stated that all doctors authorized appellant's "going back to work." The administrative law judge found that because of Vick's activities at the time of the hearing, he was not disabled during the period in question.
 
 
 4
 The record establishes that Dr. Uday Dave, an otolaryngologist, examined Vick's hearing and administered an audiometry test on June 22, 1979. Dave reported total deafness in the right ear and substantial loss of hearing and discrimination in the left ear, which was confirmed by an audiometry test. Dave advised Vick to use a hearing aid. In his last report, dated March 29, 1983, Dave reported severe right ear hearing loss and moderate left ear hearing loss and stated that "he did not feel that anything could be done to prevent the deafness except to avoid noise exposure and wear a hearing aid." In his decision, the administrative law judge concluded that Vick "also has a hearing loss, but uses a hearing aid and is able to hear normal speech with the hearing aid."
 
 
 5
 Vick saw Drs. Gendell, Brashear, and Donley for his lower back pain. Gendell, a neurologist, saw him on November 24, 1981. Gendell recommended a rest from vigorous work. Brashear, a general practitioner, saw him in the hospital on November 30, 1981. Vick's tenderness and back spasm improved with rest and he was discharged. He returned to the hospital on January 31, 1982, and was discharged again upon Brashear's instructions, after improvement. Donley, an orthopedic surgeon, saw him in the hospital on June 1, 1982. Pain upon straight leg raising was positive at 40 degrees on the left and negative on the right at 70 degrees. An X-ray showed intact disc spaces. After Vick improved with nerve blocks administered by the hospital, he was sent home.
 
 
 6
 Donley reported that upon examination in the office on July 20, 1982, Vick's bone scan was negative and X-rays were normal. Vick had a mild deformity in the thoracolumbar region. Rigidity of motion and straight leg raising had not changed since June, but there was no radicular component of pain.
 
 
 7
 At the request of the state Bureau of Rehabilitation Services, Vick saw orthopedic surgeon Dr. Anwarul Quader on March 23, 1983. Quader reported tenderness of the lower back and sacroiliac joints, but no deformity or muscle spasm. Numerous tests for symptoms of spinal weakness were negative. Quader diagnosed degenerative disc disease not requiring surgery. Quadar opined that Vick's chances for rehabilitation were poor, and that he was not recommending him for it.
 
 
 8
 Before seeing Quadar, Vick saw a chiropractor, Dr. Howard L. Snyder. Snyder found, among other things, radiculitis and inability to engage in any physical activity, including prolonged sitting, pulling, lifting, etc.
 
 
 9
 At the hearing on March 14, 1983, Vick testified that he is able to drive, make coffee and tend fires. Both he and his wife testified to his back pain and stiffness and hearing loss. Vick's wife also testified that he walks with a limp, a fact that no attending physician reported.
 
 
 10
 In his decision, the administrative law judge found that Vick responded well to conservative treatment for his back. The administrative law judge disregarded the chiropractor's report. Relying specifically upon the reports of Donley and Quadar, the administrative law judge found that the medical evidence did not substantiate Vick's claims of pain. The administrative law judge's decision stated that the "weight of the medical evidence fails to establish that the claimant's back condition or hearing problem has significantly limited his ability to per-orm basic work activities," and that "[Vick] does not have a severe impairment."
 
 
 11
 The administrative law judge did not specify any particular report or reports in finding that all of the attending physicians thought that Vick could return to work with no restrictions. The only physician who referred to Vick's employment possibilities was Donley, who wrote in his letter of July 20, 1982 that "the patient is certainly employable." Donley also asked the rhetorical question whether Vick "could get back to his regular job or do a regular job," and answered it in the negative. Furthermore, Donley wrote in his letter of January 28, 1983 that the "only limitations to impose upon him ... are because of pain."
 
 II.
 
 12
 The decision of the Secretary, if supported by substantial evidence, is conclusive. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is that "relevant evidence as a reasonable mind would accept as adequate to support a conclusion of disability." Mowery v. Heckler, 771 F. 2d 966, 970 (6th Cir. 1985).
 
 
 13
 The Secretary's regulations provide a step-by-step review process for determining disability. Before the Secretary can make a finding that a claimant is disabled, he must determine that: (1) the claimant is not presently engaging in substantial gainful activity, (2) the claimant has a severe impairment, (3) the claimant's impairment either meets the medical listings in Part 20 C.F.R. appx. 1 to Section 404 (1987) or conforms to steps four and five, (4) the claimant's impairment prevents him from doing past relevant work, and (5) the claimant's impairment prevents him from doing any other work, considering his age, education, experience and residual functional capacity. 20 C.F.R. 404.1520 (1987). In this case, the Secretary found that Vick's hearing and back impairments were non-severe. This determination prevented the consideration of the substantiality of the evidence at any of the other steps.
 
 
 14
 The definition of a non-severe impairment is found in 20 C.F.R. 404.1521(c) (1987).[1] This court has defined a non-severe impairment to include "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work regardless of his age, education or work experience." Salmi v. Secretary of Health and Human Services, 774 F. 2d 685, 691 (6th Cir. 1985); see also Farris v. Secretary of Health and Human Services, 773 F. 2d 85 (6th Cir. 1985). This court has previously upheld the validity of the severity regulations. Gist v. Secretary of Health and Human Services, 736 F. 2d 352, 357 (6th Cir. 1981). Vick challenges the determination that the back disease was not a severe impairment on three grounds. He argues (1) that there was substantial evidence of a significant limitation on basic work-related activity, (2) that he could not perform his past work, and (3) that the medical evidence supports the appellant's claims of subjective pain.
 
 
 15
 The first ground alone would be sufficient to require a remand for further consideration, if the administrative law judge erred in determining that appellant's impairments were not severe. The court may remand the case for further consideration of the evidence pursuant to its inherent power to remand. See Willis v. Secretary of Health and Human Services, 727 F. 2d 551, 554 (6th Cir. 1984).
 
 
 16
 The court reviews the whole record for substantial evidence. Harris v. Heckler, 756 F. 2d 431, 435 (6th Cir. 1985). The conflicts in Donley's reports, both the wife's testimony and the chiropractor's testimony, and the repeated incidents of the hospitalization tend to prove a severe impairment. For the reasons recited hereinbelow, the court cannot conclude in the light of the questions raised by these evidentiary matters either that appellant's back and hearing impairments are "slight abnormalities," or that they have such "a minimal effect on the individual that they would not be expected to interfere with the individual's ability to work regardless of age, education, or work experience." Salmi v. Secretary of Health and Human Services, 774 F. 2d 685, 691 (6th Cir. 1985).
 
 
 17
 Because no other physician addressed the issue, the administrative law judge must have based his finding that Vick could "go back to work" upon the statement in Donley's reports that he was "certainly employable." If this was in fact his basis for his conclusions, in drawing this conclusion from the evidence, the administrative law judge failed to reconcile the "certainly employable" opinion with Donley's statement in the same report that appellant "could not get back to a regular job or do a regular job," or Donley's statement that his "only limitation is pain." Although substantial deference is given to the medical opinions and diagnoses of treating physicians, complete deference is not accorded to their testimony if the evidence is contradicted. King v. Heckler, 742 F. 2d 968, 973 (6th Cir. 1984). Furthermore, because the administrative law judge stated that all of the physicians gave Vick permission to "go back to work," the court cannot infer that the administrative law judge considered all of Donley's testimony or even that he relied upon any of Donley's testimony. He clearly erred in summarily dismissing the other physicians' evidence, for the other physicians did not say that Vick could go back to work.
 
 
 18
 Under the circumstances, the court cannot conclude that the error in the administrative law judge's conclusion that appellant "could go back to work", and the other errors in disregarding the chiropractor's testimony and appellant's limp were inconsequential. It is clear that the testimony of a physician who has examined the claimant only once is entitled to less weight than the testimony of the claimant's own physicians. Harris v. Heckler, 756 F. 2d 435, 438 (6th Cir. 1984). Therefore, Quadar's testimony should be considered less important to the Secretary's decision than Donley's report of the medical findings. The case must be remanded to the administrative law judge to complete the steps of the disability process.[2] Mowery v. Heckler, 771 F. 2d 966, 973 (6th Cir. 1985) .
 
 
 19
 The decision of the district court is REVERSED, and the case is remanded to the district court with instructions to remand to the Secretary for completion of the steps in evaluating applicant's disability claim.
 
 
 
 [1]
 120 C.F.R. 404.1521 (1987) states: (A) A non-severe impairment. An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities. (B) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instruction; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting
 
 
 [2]
 Although we emphasize the administrative law judge's error with regard to the back complaints, it appears that he is correct with respect to the hearing complaints. Vick claims that his test score of 64% on the hearing test is equivalent to discrimination of 36%, and thus constitutes a disability under Rule 2.08 of subpart P, appendix I of the Secretary's Regulations, 20 C.F.R. (1987). In the only recent reported decision to address the issue of hearing discrimination, the applicant's discrimination score was assumed to be equivalent to the discrimination. See Williams v. Bowen, 636 F. Supp. 699, 702 (N.D.Ill. 1986). Furthermore, the scientific literature supports the Secretary. See e.g. Audiometric Interpretation: A Manual of Basic Audiometry, LLoyd and Kaplan, 1st Ed. (University Park Press 1978)